B. NEWAL SQUYRES (ISB 1621)
TED C. MURDOCK (ISB 5431)
HOLLAND & HART LLP
U.S. Bank Plaza
101 South Capitol Blvd., Suite 1400
Boise, ID 83702
Telephone: 208-342-5000
Facsimile: 208-343-8869
nsquyres@hollandhart.com
tmurdock@hollandhart.com

ARTHUR L. SHINGLER III
MARY K. BLASY
HAL D. CUNNINGHAM
SCOTT+SCOTT LLP
600 B Street, Suite 1500
San Diego, CA  92101
Telephone:  619-233-4565
Facsimile: 619-233-0508
ashingler@scott-scott.com
mblasy@scott-scott.com
hcunningham@scott-scott.com

*Counsel for Proposed Lead Plaintiff*
*Plymouth County Contributory Retirement System*

[Additional Counsel on Signature Page.]

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| CITY OF MARYSVILLE GENERAL EMPLOYEES RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NIGHTHAWK RADIOLOGY HOLDINGS, INC., DR. PAUL BERGER, TIM MAYLEBEN and GLENN R. COLE,<br><br>Defendants. | No.  2:09-cv-00659-EJL-CWD<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLYMOUTH COUNTY CONTRIBUTORY RETIREMENT SYSTEM  FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL<br><br>ORAL ARGUMENT REQUESTED |

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    PRELIMINARY STATEMENT ................................................................................... 2

III.   FACTUAL BACKGROUND ....................................................................................... 3

IV.   ARGUMENT .............................................................................................................. 4

       A.     Plymouth County Should Be Appointed as Lead Plaintiff ..................................... 4

             1.     Plymouth County's Motion Is Timely ....................................................... 4

             2.     Plymouth County Believes that It Possesses the Largest Financial Stake in the Relief Sought by the Class ............................................................... 4

             3.     Plymouth County Is Otherwise Qualified Under Rule 23 ......................... 6

       B.     The Court Should Approve Plymouth County's Choice of Counsel ...................... 9

V.     CONCLUSION .......................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Armour v. Network Associates, Inc.*,
171 F. Supp. 2d 1044 (N.D. Cal. 2001) ................................................................7

*Dukes v. Wal-Mart, Inc.*,
509 F.3d 1168 (9th Cir. 2007) ..............................................................................7

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1997) ..............................................................................8

*Hanon v. Dataproducts Corp.*,
976 F. 2d 497 (9th Cir. 1992) ...............................................................................7

*In re Atlas Mining Co. Sec. Litig.*,
No. 07 Civ. 428, 2008 WL 821756 (D. Idaho Mar. 25, 2008) ...........................5, 7

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .......................................................................1, 2, 8, 9

*In re Cooper Companies Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ..........................................................................8

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ............................................................................5

*In re Olsten Corp. Sec. Litig.*,
3 F.Supp. 2d 286 (E.D.N.Y. 1998) .......................................................................5

*Lax v. First Merchants Acceptance Corp.*,
No. 97 Civ. 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ...........................5

*S.E.C. v. Bear, Stearns & Co., Inc.*,
No. 03 Civ. 2937, 2005 WL 217018 (S.D.N.Y. Jan. 31, 2005) ..........................5, 6

*Vladimir v. Bioenvision, Inc.*,
No. 07 Civ. 6416, 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007)..........................9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLYMOUTH COUNTY
CONTRIBUTORY RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR
APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §27(a)(3)(A)(i) ........................................................................................................1
  §78u-4 ...................................................................................................................11
  §78u-4(1)(3)(B)(iii)(I)(cc) .................................................................................6, 7
  §78u-4(a)(3)(A)(i) .............................................................................................1, 4
  §78u-4(a)(3)(A)(i)(II) ............................................................................................4
  §78u-4(a)(3)(B) .........................................................................................1, 4, 9, 11
  §78u-4(a)(3)(B)(i) .............................................................................................1, 4
  §78u-4(a)(3)(B)(iii)(I) ...........................................................................................2
  §78u-4(a)(3)(B)(iii)(I)(bb) .....................................................................................4
  §78u-4(a)(3)(B)(iii)(II)(aa) ....................................................................................9
  §78u-4(a)(3)(B)(v) ............................................................................................9, 11

Federal Rules of Civil Procedure
  Rule 23 .............................................................................................................2, 6, 8, 9
  Rule 23(a) ..............................................................................................................7
  Rule 23(a)(3) .........................................................................................................7
  Rule 23(a)(4) ......................................................................................................7, 8

**OTHER AUTHORITIES**

Conference Report on the Private Securities Litigation Reform Act of 1995,
  H.R.Rep.No. 104-369 (1995) ................................................................................5

H.R. Conference Report on Securities Litigation Reform,
  S. Rep. No. 104-98, *reprinted in* U.S.C.C.A.N. 679 ...........................................8, 9

Newberg, *et al.*, *Newberg on Class Actions*, §3:13 (4th ed. 2008) ................................7

iii

## I.     INTRODUCTION

Plymouth County Contributory Retirement System ("Plymouth County") respectfully submits this memorandum in support of its motion to be appointed lead plaintiff pursuant to Section 21D of the Exchange Act of 1934, 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and for approval of its selection of the law firm of Scott+Scott LLP ("Scott+Scott") as lead counsel for the class and Holland & Hart LLP ("Holland & Hart") as liaison counsel for the class.

Pursuant to the PSLRA, district courts are to appoint as lead plaintiff, from among those seeking such appointment who also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, the movant or group of movants with the largest financial interest in the litigation. *See* 15 U.S.C. §78u-4(a)(3)(B). The present matter is a class action that alleges violations of the federal securities laws. The PSLRA establishes a three-step procedure for the selection of lead plaintiffs to oversee class actions brought under the federal securities laws. *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). First, §27(a)(3)(A)(i) provides that within 20 days after the date on which a securities fraud class action is filed, the initial plaintiff is required to publish a notice advising potential plaintiff class members of the pendency of the action, the claims, the purported class period, and that any member of the class may file a motion with the Court to serve as lead plaintiff no later than 60 days from the publication of that original notice. 15 U.S.C. §78u-4(a)(3)(A)(i). Notice in this action was first published on December 17, 2009. *See* Declaration of Ted C. Murdock filed concurrently herewith ("Murdock Decl."), Ex. A.

Second, §21D(a)(3)(B)(i) directs this Court to consider any motions brought by class members seeking to be appointed as lead plaintiffs as soon as practicable after the Court decides any pending motion to consolidate, but no later than 90 days after publication of the notice. Under this provision of the Exchange Act, the Court shall appoint the "most adequate plaintiff" to serve as lead plaintiff for the class. The Exchange Act provides that the Court shall presume

1

to be the lead plaintiff the class member who: (1) has either filed a complaint or moved for lead plaintiff in response to a notice; (2) "has the largest financial interest in the relief sought;" and (3) satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Finally, after the presumptive lead plaintiff has been identified, other class members have "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F. 3d at 730.

For the reasons set forth below, Plymouth County is "the most adequate plaintiff" under the PSLRA to serve as lead plaintiff. Plymouth County believes that it has the largest financial interest in the relief sought by this action by virtue of its losses flowing from purchases of NightHawk Radiology Holdings, Inc. ("NightHawk" or the "Company") securities during the time period between April 10, 2007 and February 13, 2008, inclusive (the "Class Period"). The fund has lost $415,685.62. *See* Murdock Decl., Ex. B. Plymouth County further satisfies the relevant requirements of Rule 23 as an adequate class representative with claims typical of the other purchasers of NightHawk securities. Plymouth County is a sophisticated institutional investor, capable of conducting and supervising counsel in complex securities litigation. *See* Murdock Decl., Ex. C. Additionally, the fund's selection of Scott+Scott as lead counsel should be approved because, as the presumptive lead plaintiff, it selects lead counsel. Moreover, Scott+Scott has extensive experience in the prosecution of securities class actions and will adequately represent the interests of all class members as lead counsel. *See* Murdock Decl., Ex. D.

## II.        PRELIMINARY STATEMENT

Presently pending in this District is the action captioned above (the "Action") brought on behalf of a class of purchasers of NightHawk securities. The action names NightHawk and certain of its officers and/or directors as defendants and alleges that defendants' conduct violated Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. The Action asserts that purchasers of NightHawk purchased in reliance on the materially false and misleading statements

2

and/or omissions of defendants during the Class Period. Plymouth County hereby moves this Court for an order appointing it as lead plaintiff for the Action and approving its selection of counsel.

## III.      FACTUAL BACKGROUND

NightHawk, through its subsidiaries, provides professional services, business services, and clinical workflow technology to radiology groups and hospitals in the United States. As of December 31, 2008, the Company provided professional radiology services to approximately 780 radiology practices serving approximately 1,500 hospitals. The Company was founded in 2001 and is headquartered in Coeur d'Alene, Idaho. As of October 18, 2009, there were 23,542,807 shares of NightHawk's common stock issued and outstanding which trade on the NASDAQ under the symbol "NHWK."

On April 9, 2007, NightHawk announced that the Company had acquired The Radlinx Group ("Radlinx"), a Texas-based provider of teleradiology services, for $53 million, which was touted to increase the Company's customer base to cover 24% of all U.S. hospitals. NightHawk stated that the Company expected the deal to add approximately 5 cents per share to earnings in 2007.

During the Class Period, NightHawk failed to disclose to analysts and investors that the Company was experiencing material delays in transitioning the former Radlinx physician contracts to the Company's compensation model, which would impact fiscal 2007 results, that demand for the Company's services was weakening. These facts began to come to light beginning on January 28, 2009, when the Company announced its preliminary fiscal 2007 results. The following day, on January 29, 2008, NightHawk shares dropped $2.64, or 14%, to $16.24. As more information emerged regarding these problems, the share price continued to decline, plummeting to $12.54 at the end of the Class Period.

3

# IV.      ARGUMENT

**A.      Plymouth County Should Be Appointed as Lead Plaintiff**

**1.      Plymouth County's Motion Is Timely**

The plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i).  On December 17, 2009, a notice of pendency of the action was published by the plaintiff in the first-filed action via *Business Wire*; a service that disseminates full-text news releases from thousands of companies and organizations worldwide to news media, financial markets, disclosure systems, investors, information web sites, databases and other audiences; providing the requisite notice as required by the Exchange Act.  *See* Murdock Decl., Ex. A.  Class members who filed a complaint or move pursuant to §21D(a)(3)(B) of the Exchange Act are eligible to be appointed as lead plaintiffs, so long as their motion is timely.  15 U.S.C. §78u-4(a)(3)(B)(i).  Here, Plymouth County's motion was filed within 60 days from the publication of notice and, as such, is timely.  15 U.S.C. §78u-4(a)(3)(A)(i)(II).

**2.      Plymouth County Believes that It Possesses the Largest**
**Financial Stake in the Relief Sought by the Class**

The PSLRA provides that courts:

[S]hall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. §78u-4(a)(3)(B)(i).  The Exchange Act requires this Court to adopt a rebuttable presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that have "the largest financial interest in the relief sought by the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).  Congress reasoned that increasing the role of larger investors, which typically have a larger financial stake in the outcome of the litigation,

4

would be beneficial because investors with a large financial stake are more apt to effectively manage complex securities litigation. *See* Conference Report on the Private Securities Litigation Reform Act of 1995, H.R.Rep.No. 104-369, at 34 (1995) ("[C]lass members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").

While the PSLRA does not provide a method for determining the relative financial interests of lead plaintiff movants, Courts of the Ninth Circuit and others have adopted the four-factor *Lax* inquiry to determine "largest financial interest" under the PSLRA: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *In re Atlas Mining Co. Sec. Litig.*, No. 07 Civ. 428, 2008 WL 821756, at *5 n.9 (D. Idaho Mar. 25, 2008); *see also In re Olsten Corp. Sec. Litig.*, 3 F.Supp. 2d 286, 295 (E.D.N.Y. 1998) (citing *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)).   Plymouth County **purchased 39,100 shares of NightHawk common stock** during the Class Period**.** Plymouth County **expended approximately $792,218.62 acquiring the shares**. *See* Murdock Decl., Ex. B.

With regard to losses, a majority of courts that have held that LIFO (Last-In-First-Out) analysis is the appropriate method for determining loss due to securities fraud. "[M]ore recently, courts have preferred LIFO and have generally rejected FIFO (First-In-First-Out) as an appropriate means of calculating losses in securities fraud cases," *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005), because LIFO methodology "unlike FIFO, . . . takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price." *Id*. (Unlike FIFO, "LIFO . . . has been used not only for lead plaintiff calculations, but also to determine compensation amounts for stockholders suffering losses due to securities fraud") (citing *S.E.C. v. Bear, Stearns & Co., Inc.*, No. 03 Civ. 2937, 2005 WL

217018, at *7 (S.D.N.Y. Jan. 31, 2005)).   For this reason, losses of Plymouth County were calculated using LIFO methodology.

In the LIFO calculation, last-purchased shares are offset against first class period sales; any remaining shares sold during the class period are generally offset against shares held at the beginning of the class period.  For purchase transactions that are not matched to sell transactions that occurred during the Class Period, the 90-day average hold price is applied.[1]  During the Class Period, as evidenced by, among other things, the accompanying signed Certification and chart showing its Class Period transactions (*see* Murdock Decl., Exs. B and C), Plymouth County purchased 39,100 shares of NightHawk common stock at prices artificially inflated by the materially false and misleading statements issued and/or lack of material disclosures by defendants and were injured thereby.  As a result, Plymouth County incurred a substantial ***LIFO loss of approximately $415,685.62 on its transactions in NightHawk stock – well over half of its total investment.***[2]

***Lax* Factors**

| Class Period | Number of Shares Purchased | Net Shares | Net Funds Expended | LIFO Loss |
|---|---|---|---|---|
| **April 10, 2007 to February 13, 2008** | **39,100** | **N/A** | **$792,218.62** | **$415,685.62** |

Thus, Plymouth County has a large financial interest in this case and should be appointed lead plaintiff here.

### 3.       Plymouth County Is Otherwise Qualified Under Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the Exchange Act provides that, at the outset of  the litigation, lead plaintiffs must also "otherwise satisfy[y] the requirements of Rule 23 of the

---

[1]       Of note, here, Plymouth County did not sell any shares during the Class Period.  Thus, its losses would be the same using either LIFO or FIFO methodologies.

[2]       *See* Murdock Decl., Ex. C.

Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(1)(3)(B)(iii)(I)(cc).  With respect to the qualifications of the class representative, Rule 23(a) requires generally that the plaintiff's claims be typical of the claims of the class and that the representative fairly and adequately protect the interests of the class.  As detailed below, Plymouth County satisfies the typicality and adequacy requirements of Rule 23(a) and is qualified to be appointed as lead plaintiff here.

The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues.  *Hanon v. Dataproducts Corp.*, 976 F. 2d 497, 508 (9th Cir. 1992); *Atlas Mining*, 2008 WL 821756, at *6; *Armour v. Network Associates, Inc.*, 171 F. Supp. 2d 1044, 1052 (N.D. Cal. 2001).  The Ninth Circuit has held that Rule 23(a)(3) should be interpreted somewhat permissively and that "'representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'"  *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1997)).

Here, the questions of law and fact common to the members of the class that predominate over questions that may affect individual class members include the following:

    (i)    whether the Exchange Act was violated by defendants; and

    (ii)    whether the members of the class have sustained damages and, if so, what is the proper measure of damages.

As a result, there is a well-defined community of interest in the questions of law and fact involved in this case.  The claims asserted by Plymouth County, which acquired NightHawk securities during the Class Period, are typical of the claims of the members of the proposed class. Because the claims asserted by Plymouth County are based on the same legal theories and arise "'from the same event or practice or course of conduct that gives rise to the claims of other class members,'" typicality is satisfied. *See* Newberg, *et al.*, *Newberg on Class Actions*, §3:13 (4th ed. 2008).  The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is

7

established that a representative party, "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Hanlon*, 150 F.3d at 1020. In order to satisfy this requirement, a prospective lead plaintiff must show that he, she or it does not have any conflicts of interest with other class members and that the plaintiff and counsel will vigorously prosecute the case. *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 636 (C.D. Cal. 2009). In the context of a motion to appoint lead plaintiff in a securities fraud class action, the key inquiry is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job. *Cavanaugh*, 306 F.3d at 732.

Here, Plymouth County will more than adequately represent and protect the interests of the class. First, its interests are clearly aligned with the members of the proposed class and there is no evidence of any antagonism between its interests and the interests of the proposed class members. Second, as detailed above, Plymouth County shares substantially similar questions of law and fact with the members of the proposed class and its claims are typical of the members of the class. Third, it has amply demonstrated that it will adequately serve as class representative by signing a sworn certification affirming the willingness to serve as, and assume the responsibilities of, a class representative. Finally, Plymouth County has taken significant steps that will promote the protection of interests of the class: specifically, it carefully evaluated the litigation and is selecting proposed lead counsel who are qualified, experienced and able to conduct this complex litigation in a professional manner. *See* Murdock Decl., Ex. D. Clearly, Plymouth County satisfies the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff in this action.

In addition to satisfying the requirements of Rule 23, Plymouth County – which manages over $600 million in retirement assets – is precisely the type of sophisticated institutional investor envisioned by Congress to serve as lead plaintiff in a class action for violation of the federal securities laws. *See* H.R. Conference Report on Securities Litigation Reform, S. Rep.

8

No. 104-98, at 14 (1995), *reprinted in* U.S.C.C.A.N. 679, 690 ("an institutional investor acting as lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors."). *See id.* at 34 ("[t]he Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416, 2007 WL 4526532, at *3 (S.D.N.Y. Dec. 21, 2007) ("Congress decided that the PSLRA's objectives are best achieved when lead plaintiffs are institutional investors or others with large holdings at stake whose interests will be most strongly aligned with those of the class members.") (citing cases).

In sum, Plymouth County, having the largest financial interest and satisfying the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff, should be appointed Lead Plaintiff in the consolidated Action as such pursuant to 15 U.S.C. §78u-4(a)(3)(B) and its selection of Holland & Hart as liaison counsel should be approved.

**B.     The Court Should Approve Plymouth County's Choice of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734-35. As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Here, Plymouth County has selected the law firm of Scott+Scott to represent the class and Holland & Hart as liaison counsel. Scott+Scott has extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Murdock Decl., Ex. D. Holland & Hart has extensive experience litigating in Idaho federal court and relevant experience litigating securities class actions, having recently served as liaison counsel in the *Atlas Mining* securities litigation. *In re Atlas Mining Co. Sec. Litig.*, No. 07 Civ. 428-EJL (D. Idaho). *See* Murdock Decl., Ex. E.

Not only does Plymouth County's choice of lead counsel satisfy the requirements of the PSLRA, Scott+Scott is ideally suited to serve as lead counsel in this litigation. Scott+Scott has extensive experience handling shareholder class actions and other complex litigation, and claims of the type asserted in this action. Further, Scott+Scott possesses vast resources, in terms of both financial ability and expertise, and has committed to put these resources to use for the benefit of stockholders like the proposed lead plaintiff here.

Scott+Scott has served as lead or co-lead counsel in many high profile class actions, recovering hundreds millions of dollars for investors and others harmed by corporate mismanagement, forcing a number of important corporate reforms. Scott+Scott recently obtained a settlement of $80 million for a class of purchasers of Priceline stock in *In re Priceline.com Sec. Litig.*, No. 00-01844 (D. Conn.). Scott+Scott likewise obtained a $122 million settlement for purchasers of Mattel stock in *Thurber v. Mattel, Inc.*, No. 99-10368 (C.D. Cal.). Additional recent securities settlements obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) (settlement of $39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) (settlement of $50 million); *In re Northwestern Corp. Sec. Litig.*, No. 03-04049 (D.S.D.) (settlement of $61 million); *Irvine v. Imclone Systems, Inc.*, No. 02-00109 (S.D.N.Y.) (settlement of $75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133 (D. Conn.) (settlement of $27 million); *In re Qwest Communications International, Inc.*, No. 02-08188 (Colorado District Court, City and County of Denver) (shareholder derivative settlement including significant corporate governance reforms and $25 million for the company); and *In re Lattice Semiconductor Corp. Deriv. Litig.*, No. 043327 (Cir. Ct. Oregon) (significant monetary recovery and business reforms, including termination of the then-CEO, termination and adoption of significant changes to the company's auditing, insider trading, executive compensation and other internal practices), among other recoveries and actions.

10

In addition, Plymouth County has selected Holland & Hart to serve as liaison counsel because they are highly competent, experienced and prepared to conduct this litigation in an efficient and professional manner. *See* Murdock Decl., Ex. E.

## V.        CONCLUSION

For all the foregoing reasons, Plymouth County respectfully requests that the Court appoint Plymouth County as lead plaintiff in the consolidated Action pursuant to §27D(a)(3)(B) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 and approve Plymouth County's selection of the law firm of Scott+Scott LLP to serve as lead counsel and Holland & Hart to serve as liaison counsel pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v) and grant such other and additional relief as the Court may deem just and proper.

DATED: February 16, 2010                    Respectfully submitted,

**HOLLAND& HART LLP**

 /s/ Ted C. Murdock
TED C. MURDOCK (ISB 5431)
B. NEWAL SQUYRES (ISB 1621)
*Proposed Liaison Counsel*

ARTHUR L. SHINGLER III
MARY K. BLASY
HAL D. CUNNINGHAM
SCOTT+SCOTT LLP
600 B Street, Suite 1500
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
ashingler@scott-scott.com
mblasy@scott-scott.com
hcunningham@scott-scott.com

DAVID R. SCOTT
SCOTT+SCOTT LLP
P.O. Box 192
156 South Main Street
Colchester, CT  06415
Telephone:  860-537-3818
Facsimile: 860-537-4432
drscott@scott-scott.com

11

– and –

Willie C. Briscoe
THE BRISCOE LAW FIRM, PLLC
The Preston Commons
8117 Preston Rd., Suite 300
Dallas, TX 75225
Telephone: 214-706-9314
Facsimile: 214-706-9315
wbriscoe@thebriscoelawfirm.com

*Lead Counsel for Proposed Lead Plaintiff*
*Plymouth County Contributory Retirement System*

12

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 16, 2010.

   /s/ Ted C. Murdock
TED C. MURDOCK (ISB 5431)
HOLLAND & HART LLP
U.S. Bank Plaza
101 South Capitol Blvd., Suite 1400
Boise, ID 83702
Telephone: 208-342-5000
Facsimile: 208-343-8869
tmurdock@hollandhart.com