Paul J. Augustine, ISB #4608
Augustine & McKenzie, PLLC
1004 W. Fort Street
Boise, Idaho 83702
(208) 367-9400
(208) 947-0014 (facsimile)
Email: pja@amlawidaho.com

Counsel for Movant,
The Miramar Firefighters' Pension Fund

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CITY OF MARYSVILLE GENERAL EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NIGHTHAWK RADIOLOGY HOLDINGS, INC., DR. PAUL BERGER, TIM MAYLEBEN, and GLENN R. COLE, <br><br> Defendants. | No. CIV 09-659-N-EJL <br><br> MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE MIRAMAR FIREFIGHTERS' PENSION FUND FOR APPOINTMENT AS LEAD PLAINTIFF AND TO APPROVE ITS SELECTION OF COUNSEL |

### I.  INTRODUCTION

The Miramar Firefighters' Pension Fund (the "Pension Fund" or "Movant") respectfully submits this Memorandum of Law in support of its Motion for Appointment as Lead Plaintiff and for Approval of its Selection of Lead and Liaison Counsel. With estimated losses in excess of $140,000 arising from its purchase of the common stock of NightHawk Radiology Holdings,

Memorandum of Law in Support of the Motion
of the Miramar Firefighters' Pension Fund for
Appointment as Lead Plaintiff and to Approve
its Selection of Counsel

Inc. ("NightHawk" or the "Company") between April 10, 2007 and February 13, 2008 (the "Class Period"), the Pension Fund has the "largest financial interest" in this putative class action, and otherwise meets the requirements of the Private Securities Litigation Reform Act ("PSLRA").

As an institutional investor, the Pension Fund, which manages the retirement funds of the City of Miramar, Florida's firefighters, is precisely the type of investor that Congress had in mind when it passed the PSLRA in 1995, and is uniquely qualified to serve as lead plaintiff on behalf of the class (the "Class") proposed in the above-captioned action. The PSLRA's legislative history reflects that it was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, *inter alia*, such investors are presumed to "represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Rep. No. 104-369, at 34 (1995); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2508 (2007) (PSLRA "aimed to increase the likelihood that institutional investors – parties more likely to balance the interests of the class with the long-term interests of the company – would serve as lead plaintiffs"); *In re Cavanaugh*, 306 F.3d 726, 738 (9th Cir. 2002) (PSLRA's lead plaintiff provisions "promote the goal of attracting institutional investors ..."); *Backe v. Novatel Wireless, Inc.*, No. 08-CV-01689-H (RBB), 2008 WL 5214262, at *4 (S.D. Cal. Dec. 10, 2008) (finding that "a sophisticated institutional investor with a real financial interest in the litigation" to be "the sort of lead plaintiff envisioned by Congress in the enactment of the PSLRA"). Thus, appointment of the Pension Fund as Lead Plaintiff in this securities action is appropriate, not only because it meets all the prerequisites of the PSLRA, but also

Memorandum of Law in Support of the Motion
of the Miramar Firefighters' Pension Fund for
Appointment as Lead Plaintiff and to Approve
its Selection of Counsel                -2-

because such an appointment will fulfill the goals of that statutory scheme.

As demonstrated below and pursuant to the PSLRA, Movant is the "most adequate" plaintiff to represent those who purchased or otherwise acquired NightHawk's securities during the Class Period and it should be appointed as Lead Plaintiff. In addition, Movant has selected and retained Shepherd Finkelman Miller & Shah, LLP ("SFMS") and Lockridge Grindal Nauen P.L.L.P. ("Lockridge") to serve as Lead Counsel, both are law firms with extensive experience in prosecuting securities fraud and other complex litigation matters, as well as Augustine & McKenzie, PLLC, which also has considerable litigation experience, as Liaison Counsel. Accordingly, the Pension Fund's selection of counsel should be approved.

## II. **SUMMARY OF ALLEGATIONS**[1]

This action is brought on behalf of those persons or entities that purchased or otherwise acquired the common stock of NightHawk during the Class Period. The Complaint commencing this action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78(j)(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against Defendant NightHawk, as well as the following individuals, who occupied senior management positions during the Class Period: Defendant, Dr. Paul Berger ("Berger"), the Company's co-founder, who served both as NightHawk's Chief Executive Officer ("CEO") and the Chairman of its Board of Directors; Defendant, Tim Mayleben ("Mayleben"), who was the Company's President and Chief Operating Officer ("COO"); and

---

[1] These facts are based upon the Complaint, filed in this action on December 17, 2009 (the "Complaint").

Memorandum of Law in Support of the Motion
of the Miramar Firefighters' Pension Fund for
Appointment as Lead Plaintiff and to Approve
its Selection of Counsel         -3-

Defendant, Glenn R. Cole ("Cole"), who was NightHawk's Senior Vice President and Chief Financial Officer ("CFO").

NightHawk, a Delaware corporation headquartered in Coeur d'Alene, Idaho, through its wholly-owned subsidiary, NightHawk Radiology Services, LLC, claims to be "leading the transformation of the practice of radiology by providing high-quality, cost-effective solutions to radiology groups and hospitals throughout the United States." Complaint, ¶20. Prior to the Class Period, the Company provided professional radiology services, including preliminary "reads" of CT scans and x-rays, during off-hours (*i.e.*, overnight and during holidays and weekends) through the use of affiliated radiologists located outside of the United States. *See id.*

Because Medicare generally only provides reimbursement for medical services provided within the United States, the Company's announcement on April 10, 2007 that it had acquired The Radlinx Group ("Radlinx") was intended to "alleviate [these] concerns." *Id.*, ¶22. Equally important, Radlinx was expected to contribute revenue of between $17 million and $19 million for 2007. *Id.* Despite the simultaneous news that NightHawk's then-CFO, Christopher Huber (also a co-founder of the Company), had resigned and was replaced by Cole, the market responded positively to NightHawk's announcement and the Company's price per share rose approximately 7%, closing at $20.59 on April 10, 2007. *Id.*, ¶23.

Thereafter, Defendants continually touted the "successful integration" of Radlinx, while continually increasing the Company's expected total revenue. *See* Complaint, ¶¶24-25. For example, in a July, 2007 press release, Defendants again commented on NightHawk's "impressive acquisition contribution," which included Radlinx, and further increased previously-

Memorandum of Law in Support of the Motion
of the Miramar Firefighters' Pension Fund for
Appointment as Lead Plaintiff and to Approve
its Selection of Counsel                    -4-

issued guidance on the Company's 2007 expected revenue. *See id.*, ¶27. Berger expressed confidence that the revenue would be achieved, and both he and Mayleben emphasized, *inter alia*, the number of radiologists obtained through the Radlinx acquisition. *See id.*, ¶28.

Shortly after the price per share of NightHawk's common stock reached a Class Period high of $25.25 on October 10, 2007, the Company issued an October 30, 2007 press release, which made a cryptic reference to "significant progress on integrating recent acquisitions" (of which there were at least three, including Radlinx, during the Class Period). Complaint, ¶29. The Company also lowered its 2007 revenue guidance. *Id.* The next day, during a conference call, Defendants explained that less than all of Radlinx's radiologists had been retained and that the training process for even those radiologists had not been completed. *Id.*, ¶30.

On January 28, 2008, the Company issued a press release announcing its preliminary 2007 financial results, in which it blamed lower revenues on, *inter alia*, "a delay in transitioning the former Radlinx physician contracts to [NightHawk's] compensation model." Complaint, ¶32. On February 13, 2008, the Company confirmed, *inter alia*, that its revenue for the fiscal year ended December 31, 2007 was $151.7 million, well below its guidance stated earlier in the Class Period, and substantially lower than its expected 2008 revenue. *Id.*, ¶34. NightHawk also announced the departure of both Mayleben and Cole, the latter only nine months after he joined the Company. *Id.*

As alleged in the Complaint, the adverse impact of Defendants' belated disclosures of the Company's condition was significant. In response to the Class Period-ending disclosure, the Company's stock closed down 11%, at $12.54 per share, on February 14, 2008. Complaint, ¶35.

Memorandum of Law in Support of the Motion
of the Miramar Firefighters' Pension Fund for
Appointment as Lead Plaintiff and to Approve
its Selection of Counsel -5-

Overall, from January 29, 2008 to February 14, 2008, the price of NightHawk common stock declined approximately 34%. *Id.*, ¶39.

The Complaint alleges that Defendants' Class Period statements were materially false and misleading because, *inter alia*, they failed to disclose the difficulties in integrating the Radlinx radiologists and weaknesses in the demand for NightHawk's services. Complaint, ¶31. In addition, the Complaint chronicles the extensive insider sales of Berger, and his son, Jon Berger (also a co-founder of NightHawk), during the Class Period, amounting to proceeds in excess of $12 million and $4 million, respectively. Complaint, ¶40.

### III. ARGUMENT

#### A. Movant Is The Most Adequate Applicant And Should Be Appointed Lead Plaintiff

##### 1. Compliance With The Notice And Filing Provisions Of The PSLRA

The PSLRA establishes a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§78u-4(a)(1) and (a)(3)(B)(I). *See generally In re Cavanaugh*, 306 F.3d 726, 729-731 (9th Cir. 2002) (discussing the PSLRA's "three-step process for identifying the lead plaintiff"); *In re Atlas Mining Co. Sec. Litig.*, No. CV 07-428-N-EJL-MHW, 2008 WL 821756, at *3 (D. Id. March 25, 2008) (same). Pursuant to this procedure, the plaintiff who files the initial action must publish a notice to the class within twenty (20) days of filing the action. This notice must inform class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(I). Within sixty (60) days of publishing the notice, any person or group of persons who are members of the proposed

Memorandum of Law in Support of the Motion
of the Miramar Firefighters' Pension Fund for
Appointment as Lead Plaintiff and to Approve
its Selection of Counsel                -6-

class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Here, notice of the filing of this action was published on December 17, 2009, following the filing of the Complaint. *See* Exhibit "A" to the Declaration of Jayne A. Goldstein ("Goldstein Dec.") submitted herewith.[2] Accordingly, the time period in which Class members may move to be appointed Lead Plaintiff in this case expires on February 16, 2010. *See* 15 U.S.C. §78u- 4(a)(3)(A) and (B). Movant now timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the proposed Class.

The Certification of the Pension Fund, which is attached to the Goldstein Declaration as Exhibit "B," states that a representative of the Pension Fund, duly authorized to prosecute these claims, has reviewed the allegations of the Complaint and that the Pension Fund is willing to serve as a representative on behalf of the Class. In addition, the Pension Fund has selected and retained competent counsel to represent it and the Class. The firm resumes for SFMS, Lockridge and Augustine & McKenzie, PLLC, are collectively attached as Exhibit "C" to the Goldstein Declaration. Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have its Motion for Appointment as Lead Plaintiff granted, and

---

[2] The notice was issued over *Business Wire*, which courts and commentators have recognized as meeting the PSLRA's definition of a "widely-circulated national business-oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(I); *see, e.g., Yousefi v. Lockheed Martin Corp.*, 70 F.Supp.2d 1061, 1067 (C.D. Cal. 1999) (citations omitted); *see also* 5 James Wm. Moore, *Moore's Federal Practice* § 23.191[2] at 23-613 (3rd ed.2009) ("[A] press release on *Business Wire*, which disseminates the information electronically to the news media, on-line services, and computer databases available to the investment community, satisfies the early notice requirement").

Memorandum of Law in Support of the Motion
of the Miramar Firefighters' Pension Fund for
Appointment as Lead Plaintiff and to Approve
its Selection of Counsel                    -7-

its selection of SFMS and Lockridge as Lead Counsel, and Augustine & McKenzie, PLLC, as Liaison Counsel, approved by the Court.

### 2. The Pension Fund Suffered The Largest Loss Of Any Other Movant

The PSLRA provides that, within ninety (90) days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that
>
> > (aa) has either filed the complaint or made a motion in response to a notice...;
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). *See Cavanaugh*, 306 F.3d at 729-730; *Atlas Mining*, 2008 WL 821756, at *3.

During the Class Period, the Pension Fund purchased NightHawk common stock and suffered significant losses. Specifically, as reflected in its Certification (Exhibit "B"), the Pension Fund purchased a total of 9,900 shares of the Company's common stock during the Class Period and, after subtracting for the value of shares retained, has suffered estimated losses

Memorandum of Law in Support of the Motion
of the Miramar Firefighters' Pension Fund for
Appointment as Lead Plaintiff and to Approve
its Selection of Counsel      -8-

in excess of $141,540,[3] which demonstrates the Pension Fund's financial interest in the outcome of this action. To the best of Movant's knowledge, there are no other applicants seeking appointment as lead plaintiff that have a larger financial interest. Therefore, the Pension Fund satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action, and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. §78u-4 (a)(3)(B).

### 3. No Grounds Exist To Challenge The Pension Fund's Adequacy As Lead Plaintiff

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." In selecting a lead plaintiff, it is well established that the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a). *See Cavanaugh*, 306 F.3d at 730; *Atlas Mining*, 2008 WL 821756, at *6. The Pension Fund should be appointed Lead Plaintiff because it satisfies the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical – but not identical – of those of the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("representative claims are 'typical' if they are reasonably co-extensive with those of

---

[3]Under the Exchange Act, losses are calculated as the difference between the purchase or sale price paid and the mean trading price over a ninety (90) day period beginning after the close of the class period. *See* 15 U.S.C. § 78u-4(e)(1). Here, the ninety (90) day period ended on May 14, 2008, and the mean or average closing price for NightHawk common stock from February 14, 2008 through May 14, 2008 is $9.46 per share. A chart reflecting the calculation of the Pension Fund's losses is attached as Exhibit "D" to the Goldstein Declaration.

Memorandum of Law in Support of the Motion
of the Miramar Firefighters' Pension Fund for
Appointment as Lead Plaintiff and to Approve
its Selection of Counsel -9-

absent class members; they need not be substantially identical"); *Hash v. United States*, No. CV 99-324-S-MHW, 2000 WL 1460801, at *7 (D. Id. July 7, 2000) (same); *see also Atlas Mining*, 2008 WL 821756, at *6 ("In cases arising under the PSLRA, courts have found the typicality requirement satisfied when the lead plaintiff's alleged injuries arise from 'the same course of conduct complained of by the other plaintiffs and his causes of actions are founded on similar legal theories'") (citation omitted). Here, the Pension Fund satisfies this requirement because, just like all other Class members, it purchased or otherwise acquired NightHawk common stock during the Class Period; the prices at which those purchases were made were artificially inflated because of Defendants' materially false and misleading statements and/or omissions; and it suffered damages as a result of Defendants' conduct. Thus, the Pension Fund's claims arise out of the same course of events as those of other Class members and are typical.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." This Court has found the adequacy requirement satisfied where "there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Atlas Mining*, 2008 WL 821756, at *6 (citation omitted).

Here, the Pension Fund is an adequate representative of the Class. Like the Class, the Pension Fund has sustained substantial damages as a result of its purchase of NightHawk common stock and would benefit from the same relief. Furthermore, there is no evidence of any antagonism between the Pension Fund and the Class. In addition, as shown below, Movant's proposed Lead Counsel are highly qualified, experienced and able to conduct this complex

Memorandum of Law in Support of the Motion
of the Miramar Firefighters' Pension Fund for
Appointment as Lead Plaintiff and to Approve
its Selection of Counsel                     -10-

litigation in a professional manner. Having suffered significant losses, the Pension Fund will also be motivated to vigorously prosecute this action.[4] Thus, Movant satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

**B.     The Court Should Approve The Pension Fund's Choice of Counsel**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), Movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. *See Cavanaugh*, 306 F.3d at 734 (the PSLRA "clearly leaves the choice of class counsel in the hands of the lead plaintiff"). The Pension Fund has selected SFMS and Lockridge to serve as co-Lead Counsel in this case, and Augustine & McKenzie, PLLC, to serve as Liaison Counsel. Both SFMS and Lockridge have substantial experience in the prosecution of shareholder, securities and other complex litigation, and have the resources necessary to efficiently conduct this litigation. Similarly, Augustine & McKenzie, PLLC, is a well-respected Boise-based law firm that can ably assist in the representation of the Pension Fund and the proposed Class. Accordingly, the Court should approve the Pension Fund's selection of co-Lead Counsel and Liaison Counsel.

---

[4] In recognition of its plain adequacy, Movant already has consulted with experts and retained investigators to assist it in vigorously prosecuting this case on behalf of the Class.

Memorandum of Law in Support of the Motion
of the Miramar Firefighters' Pension Fund for
Appointment as Lead Plaintiff and to Approve
its Selection of Counsel                    -11-

## IV. CONCLUSION

For all of the foregoing reasons, Movant respectfully requests that the Court: (I) appoint the Miramar Firefighters' Pension Fund as Lead Plaintiff in this consolidated action and (ii) approve the Movant's selection of Shepherd, Finkelman, Miller & Shah, LLP and Lockridge Grindal Nauen P.L.L.P. to serve as co-Lead Counsel and Augustine & McKenzie, PLLC, to serve as Liaison Counsel.

Dated: February 16, 2010

AUGUSTINE & McKENZIE, PLLC

_____
Paul J. Augustine, ISB #4608
1004 W. Fort Street
Boise, Idaho 83702
(208) 367-9400
(208) 947-0014 (facsimile)
Email: pja@amlawidaho.com

Jayne A. Goldstein
Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
1640 Town Center Circle, Suite 216
Weston, FL 33326
(954) 515-0123
(954) 515-0124 (facsimile)
Email: jgoldstein@sfmslaw.com
       nzipperian@sfmslaw.com

Memorandum of Law in Support of the Motion
of the Miramar Firefighters' Pension Fund for
Appointment as Lead Plaintiff and to Approve
its Selection of Counsel                          -12-

James E. Miller
Patrick A. Klingman
Karen Leser-Grenon
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
Email: jmiller@sfmslaw.com
      pklingman@sfmslaw.com
      kleser@sfmslaw.com

Richard A. Lockridge
Karen Hanson Riebel
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South Suite 2200
Minneapolis, MN 55401-2159
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: ralockridge@locklaw.com
      khriebel@locklaw.com

Attorneys for Movant,
The Miramar Firefighters' Pension Fund