IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CITY OF MARYSVILLE GENERAL EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No. CV 09-659-EJL-CWD |
| Plaintiff, | **AMENDED MEMORANDUM DECISION AND ORDER** |
| v. | |
| NIGHTHAWK RADIOLOGY HOLDINGS, INC., DR. PAUL BERGER, TIM MAYLEBEN, and GLENN R. COLE, | |
| Defendants. | |

Currently pending before the Court are motions filed by three different institutional investors to be appointed lead plaintiff in this class action, and for approval of lead plaintiff's selection of counsel.  The three potential lead plaintiffs are the Garden City Employees' Retirement System ("Garden City"), Plymouth County Contributory Retirement System ("Plymouth"), and the Miramar Firefighters' Pension Fund ("Miramar").  (*See* Docket Nos. 17, 20, and 24.)

**MEMORANDUM DECISION AND ORDER - 1**

The Complaint is brought on behalf of a class of purchasers of Nighthawk Radiology Holdings, Inc. ("Nighthawk") securities, and names Nighthawk and certain of its officers and/or directors as defendants.  The Complaint alleges that Defendants' conduct violated Sections 10(b) and 20(a) of the Exchange Act of 1934 and SEC Rule 10b-5.  The Complaint asserts that purchasers of Nighthawk securities relied upon materially false and misleading statements and/or omissions of Defendants during a specific period (the "Class Period").

The Court conducted a hearing on April 21, 2010.  After considering the parties' memoranda, oral arguments, and supporting materials submitted in support of their motions, the Court will appoint Plymouth as Lead Plaintiff and its counsel, Scott + Scott LLP, and liaison counsel, Holland & Hart LLP, for the reasons discussed below.

## I.
## Factual and Procedural Background

Nitghthawk Radiology Holdings, Inc. ("Nighthawk") and its subsidiaries provide professional services, business services, and clinical workflow technology to radiology groups and hospitals throughout the United States.  Nighthawk was founded in 2001 and is headquartered in Coeur d'Alene, Idaho.  As of October 18, 2009, 23,542,807 shares of Nighthawk's common stock traded on the NASDAQ.

On April 10, 2007, Nighthawk announced its acquisition of The Radlinx Group, a Texas-based provider of teleradiology services, which was publically advertised to increase Nighthawk's customer base and expected to add approximately five cents per share to earnings in 2007.  Throughout 2007, Nighthawk allegedly continued to promote the success of its

**MEMORANDUM DECISION AND ORDER - 2**

acquisition of Radlinx.  On October 10, 2007, the price per share of Nighthawk's common stock reached a high of $25.25.

Garden City, Plymouth, and Miramar, all large institutional investors, purchased Nighthawk securities between April 10, 2007 and February 13, 2008 (the "Class Period"). The investors allege that during the Class Period, Nighthawk failed to disclose to analysts and investors that it was experiencing material delays in transitioning the former Radlinx physician contracts to Nighthawk's compensation model, which would impact fiscal year 2007 results, and that demand for Nighthawk's services was weakening.

On January 28, 2008, Nighthawk issued a press release announcing its preliminary 2007 financial results, which showed lower revenues than projected and blamed a delay in transitioning the Radlinx physician contracts to Nighthawk's compensation model.  The following day, on January 29, 2008, Nighthawk shares dropped to $16.24.  As more information concerning Nighthawk's problems was released, the share price decreased to $12.54 by the end of the Class Period.  Overall, from January 29, 2008 to February 14, 2008, the price of Nighthawk common stock declined approximately 34%.

The Complaint alleges that Defendants' Class Period statements were materially false and misleading because, among other concerns, they failed to disclose the difficulties in integrating the Radlinx radiologists and weaknesses in the demand for Nighthawk's services.  In addition, the Complaint sets forth alleged insider sales of Nighthawk stock during the Class Period.

On December 17, 2009, Plaintiff City of Marysville General Employees Retirement System published a notice of pendency of this action in *Business Wire*, a service that

**MEMORANDUM DECISION AND ORDER - 3**

disseminates full-text news releases from thousands of companies and organizations worldwide to news media, financial markets, disclosure systems, and other audiences.  (Murdock Decl. Ex. A, Docket No.  22-1.)  Plymouth, Garden City, and Miramar filed the instant motions seeking to be appointed lead plaintiff on February 16, 2010.

Garden City filed its motion first, at 3:31 p.m. MST, selecting the law firms of Coughlin Stoia Geller Rudman & Robbins, LLP to serve as lead counsel and Gordon Law Offices to serve as liaison counsel. (Docket No. 17.) Next, at 5:18 p.m. MST, Plymouth requested that it be appointed lead plaintiff. (Docket No. 20.) Plymouth selected the law firms of Scott + Scott LLP as lead counsel and Holland & Hart LLP as liaison counsel. The final filing for lead plaintiff status was made by Miramar at 8:28 p.m. MST. (Docket No. 24.) Miramar selected the law firms of Shepherd Finkelman Miller & Shah LLP and Lockridge Grindal Nauen PLLP as co-lead counsel and the firm of Augustine & McKenzie PLLC to serve as liaison counsel.

In response to the Motions, Garden City conceded that, with $100,153 in losses, it possessed a smaller financial interest in the litigation than either Plymouth or Miramar.  (Docket No. 36.)  Garden City therefore conceded that the decision as to who should be appointed lead plaintiff should be between Plymouth or Miramar, but if the Court found those two plaintiffs inadequate or otherwise incapable of serving, it would accept the responsibility. Defendants took no position with respect to the motions, but reserved their right to challenge the lead plaintiff's application to be appointed class representative at the time the Court considers such a motion for class certification under Rule 23.  (Docket No. 32.)  Therefore, the Court will decide whether Plymouth or Miramar's motion should be granted.

**MEMORANDUM DECISION AND ORDER - 4**

## II.
## Motions to Appoint Lead Plaintiffs and Approve Selection of Counsel

The Private Securities Litigation Reform Act ("PSLRA") sets forth a procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a).

First, the plaintiff who files the initial action must publish notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(I). Within 60 days after publication of the notice, any member of the proposed class may move the court to serve as lead plaintiff of the purported class. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Next, within 90 days after publication of notice, "the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints" and shall appoint as lead plaintiff the member or members that the court determines to be "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA also provides a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption can be rebutted only upon proof by a member of the purported plaintiff class that the presumptive plaintiff "will not fairly and

**MEMORANDUM DECISION AND ORDER - 5**

adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Ninth Circuit Court of Appeals has recognized that a district court must follow a three-step process to determine the lead plaintiff in securities actions. *In re Cavanaugh*, 360 F.3d 726, 729 (9th Cir. 2002). First, the court must determine whether the procedural requirements are satisfied. *Id.* The procedural requirements demand that a motion for appointment as lead plaintiff be filed within 60 days of the published notice of the class action. 15 U.S.C. § 78u-4(a)(3)(A). Each prospective lead plaintiff must also provide a sworn certification that he or she has read the complaint, did not purchase the security at the direction of counsel or in order to participate in any private action and is willing to serve as a representative party. *Id.* § 78u-4(a)(2)(A).

Second, the court must determine which plaintiff has the largest financial interest by comparing the financial stakes of the parties. *In re Cavanaugh*, 360 F.3d. at 729-30. Once the individual or group of individuals with the largest financial interest is identified, the court must "focus its attention on that plaintiff" and determine whether the Rule 23 requirements are met. *Id.* at 730 (emphasis in original). If the person or group with the largest financial interest meets Rule 23's requirements, they become the presumptive lead plaintiff. *Id.*

The last step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's representations that it satisfies the requirements of Rule 23. *Id.*

### A.  Procedural Requirements

Both Plymouth and Miramar have complied with the procedural requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Both motions for appointment as lead plaintiff were filed on February 16, 2010, within 60 days of the  December 17, 2009 published notice. Additionally, the

**MEMORANDUM DECISION AND ORDER - 6**

members of the institutions have filed certifications along with their motions. (*See* Murdock Dec.

Ex. C; Goldstein Dec. Ex. B; Shingler Dec. Ex. 1, Docket Nos. 22-3, 24-4, 37-2.)

### B.  Largest Financial Interest

PSLRA's requirement that the presumptive lead plaintiff have the "largest financial

interest in the relief sought by the class" means the district court must compare the financial

stakes of the various plaintiffs and determine which plaintiff has the most to gain from the

lawsuit. *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

Plymouth claims aggregate losses of $415,685.62. (Murdock Dec. Ex. B, Docket No. 22.)

Miramar claims aggregate losses of $141,542.83, almost three times less than the losses suffered

by Plymouth. (Goldstein Dec. Ex. D, Docket No. 24-6.) Based upon the amount of loss suffered

by Plymouth, it clearly has the largest financial interest in the relief sought and the most to gain

from the lawsuit. Plymouth therefore should be appointed lead plaintiff unless the Court finds

that Plymouth does not satisfy the typicality or adequacy requirements. *In re Cavanaugh*, 306

F.3d at 732.[1]

### C.  Rule 23 Requirements

Rule 23 requires that the Court find that:

> (1) the class is so numerous that joinder of all members is
> impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical
> of the claims or defenses of the class; and

---

[1]  Miramar does not appear to contest Plymouth's losses, and concedes that Plymouth "facially appears to have the 'largest financial interest'" rendering it the presumptive lead plaintiff. (Response Brief at 5, Docket No. 33.) Rather, Miramar argues that because Mr. Farmer "lied" about the other class actions in which Plymouth is serving as lead plaintiff, he must also be lying about Plymouth's losses. Miramar's argument is, however, mere speculation and no proof has been presented to discount Plymouth's claimed loss.

**MEMORANDUM DECISION AND ORDER - 7**

(4) the representative parties will fairly and adequately protect the
interests of the class.

The requirements of "typicality" and "adequacy" of representation are the key factors in

determining the appropriate lead plaintiff under the PSLRA. *See In re Cavanaugh*, 306 F.3d

726, 730 (9th Cir. 2002).

The "typicality requirement" is satisfied when "the claims or defenses of the

representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

The test for typicality is "whether other members have the same or similar injury, whether the

action is based on conduct which is not unique to the named plaintiffs, and whether other class

members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976

F.2d 497, 508 (9th Cir. 1992). In cases arising under the PSLRA, courts have found the

typicality requirement satisfied when the lead plaintiff's alleged injuries arise from "the same

course of conduct complained of by the other plaintiffs and his causes of actions are founded on

similar legal theories." *Schonfield v. Dendreon Corp.*, 2007 WL 2916533, *4 (W.D. Wash. Oct.

4, 2007).

Miramar argues that Plymouth is "atypical" because its representative's credibility is

subject to attack. Miramar, as explained in more detail below, contends that Plymouth's

Executive Director, Mr. William Farmer, failed to disclose several other securities class actions

in which he represents Plymouth as the lead plaintiff. This argument, however, should be

considered in the context of rebutting the presumption that Plymouth can adequately serve as

lead plaintiff. The typicality requirement requires the court to focus on the claims or defenses of

the representative parties, and compare those claims to the class. Mr. Farmer's trustworthiness as

to the number of class actions Plymouth may be participating in is irrelevant to the typicality

**MEMORANDUM DECISION AND ORDER - 8**

analysis, because the facts disclosed in Mr. Farmer's certification do not relate to the claims or defenses asserted in this lawsuit.[2]

Here, Plymouth satisfies the typicality requirement because it purchased Nighthawk stock during the Class Period in reliance on Defendants' alleged misrepresentations and subsequently suffered damages. Plymouth's losses arise from the same course of conduct complained of by the other plaintiffs. Additionally, there is no evidence that Plymouth is subject to any unique defenses that relate to the claims made in the Complaint.

The adequacy requirement is satisfied "if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Richardson v. TVIA, Inc.*, 2007 WL 1129344, *4 (N.D. Cal. 2007). Plymouth's interests appear aligned with those of the other class members and there is no evidence of conflict between the representative and class interests.[3] In reviewing the record, it also appears Plymouth has retained qualified and experienced attorneys. (*See* Murdock Decl. Exs. D, E, Docket No. 22-1.) Because Plymouth satisfies the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court finds it is the presumptive lead plaintiff.

---

[2] The cases Miramar cited with respect to its argument that a proposed class representative's untrustworthiness renders the proposed lead plaintiff atypical are considered in the context of rebutting the presumption, and will be discussed below.

[3] Miramar again attempts to argue that Mr. Farmer's failure to disclose other lawsuits in which Plymouth is the lead plaintiff renders Plymouth "inadequate" as lead plaintiff. However, Miramar has not explained why such a failure to disclose renders Plymouth's interests "antagonistic" to the other class members. The argument concerning Mr. Farmer's untrustworthiness is more appropriately considered in the context of rebutting the presumption of adequacy.

**MEMORANDUM DECISION AND ORDER - 9**

**D.  Rebuttal of Lead Plaintiff Presumption**

The PSLRA allows others to rebut the lead plaintiff presumption upon proof that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Miramar attempts to rebut the presumption by arguing that the Certification submitted by Plymouth's Executive Director, William Farmer, contains false information because Plymouth failed to disclose three other cases that Plymouth is currently serving or has applied to serve as lead plaintiff. (Response Brief at 2, Docket No. 33.) Miramar's other argument relates to the PSLRA's prohibition against serving as lead plaintiff in more than five securities class actions during any three year period. 15 U.S.C. § 78u-4(a)(3)(B)(vi) (referred to as the "five-in-three" rule). With the inclusion of the two undisclosed cases, Miramar argues the five-in-three rule applies and Plymouth should be prohibited from serving as lead plaintiff.  Miramar also contends that Mr. Farmer serves as Chairman of the Board for the City of Brockton Retirement System ("Brockton") and that Brockton is serving as lead plaintiff in at least four securities class actions. Thus, Miramar asserts that, due to Brockton's participation as lead plaintiff in numerous suits and its relationship to Plymouth, Plymouth and Mr. Farmer are stretched too thin and would not be able to devote full attention to this lawsuit.

In response, Plymouth contends that its failure to include two other securities class action lawsuits, *Oshkosh* and *Coventry*, in its certification was an oversight, but that it did not need to include *SafeNet* because it was filed on August 1, 2006, which date is more than three years prior to the date of the current certification. (Response Brief at 7, Docket No. 37.) Plymouth argues

that its inadvertent mistake was not due to bad faith, and therefore neither renders Plymouth

inadequate nor shows Plymouth lied or deliberately tried to circumvent the five-in-three bar.

Second, Plymouth contends the court has discretion to waive the five-in-three bar imposed by

the PSLRA in cases involving qualified institutional investors.[4]

Plymouth admitted its error on the certification.  The sworn certification must disclose

"any other action under this chapter, filed during the 3-year period preceding the date on which

the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a

representative party on behalf of a class . . . ." 15 U.S.C. § 78u-4(a)(2)(A)(v). Plymouth

disclosed that, at the time of its certification, it had sought to serve, or was serving, as lead

plaintiff in *Bristol*, *Sonic Solutions*, *Schmalz*, *Carter's*, and *CVS Caremark*. (Murdock Decl. Ex.

C, Docket No. 22-3.) Plymouth conceded that it should have disclosed two additional matters,

and filed an amended certification disclosing its lead plaintiff status in the *Oshkosh* and *Coventry*

cases. (Shingler Decl., Docket No. 27-2.)  There is no evidence that Plymouth intentionally

omitted disclosure of the *Oshkosh* and *Coventry* cases beyond the inference that Miramar

creates.  Plymouth promptly corrected its mistake and provided a plausible and adequate

explanation for the error.

---

[4] At the hearing, Plymouth acknowledged that the five-in-three rule is at issue in this suit.
Although Plymouth argued that the five-in-three rule was not meant to apply to institutional investors, the
Court rejects that interpretation given the grant of discretion within the statute.  *See Cunha v. Hansen
Natural Corp.*, No. CV08-01249, 2009 WL 2029797 at *5 (C.D. Cal. July 13, 2009) (explaining the court
has discretion to permit a deviation from the five-in-three rule).  Nevertheless, the majority of courts
applying the professional plaintiff restriction have concluded that the five-in-three restriction does not
apply to institutional investors. *In re Daimler Chrysler AG Securities Litigation*, 216 F.R.D. 291, 300 (D.
Del. 2003) (citing *Smith v. Suprema Specialties, Inc.*, 206 F.Supp.2d 627, 640–41 (D.N.J.
2002)(collecting cases)).  But a sufficient number of other courts have recognized that the statute grants
courts discretion to ignore the prohibition, or to apply the bar even though the presumptive lead plaintiff
was an institutional investor when other factors were present that disqualified it from serving.  *Smith*, 206
F.Supp.2d at 641.

**MEMORANDUM DECISION AND ORDER - 11**

Inadvertent mistakes made in the sworn certification that do not strike at the heart of the proposed plaintiff's ability to be truthful in representing the class generally do not serve as a basis for disqualification. *See e.g. Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004) (holding that inadvertent mistakes in calculating the amount of the losses sustained by the proposed lead plaintiff were minor miscalculations that did not serve as a basis for disqualification); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 411 (D. Minn. 1998) (allowing parties to submit supplemental certifications to correct technical deficiencies, flaws, and lack of adequate explanation of trading activities). The failure to disclose other lawsuits in which the proposed lead plaintiff is or was also serving in that capacity is not the type of credibility issue that would "divert the fact finders' attention from the merits and thus infect the claims of the class as a whole." *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990). Rather, it is the type of inadvertent mistake that courts often allow to be corrected with a supplemental certification. Plymouth, by identifying the *Oshkosh* and *Coventry* cases,[5] has rectified the inadequacy.

As to the five-in-three restriction, the Court is not persuaded to apply the bar. The Court has discretion to override the five-in-three restriction. The statute states:

> *Except as the court may otherwise permit*, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff in no more than 5

---

[5] Plymouth was not required to disclose *Safenet* under 15 U.S.C. § 78u-4(a)(2)(A)(v) because *Safenet* was filed on August 1, 2006, which date is more than three years prior to February 10, 2010, the date Mr. Farmer executed the certification for Plymouth in this case. However, the five-in-three professional plaintiff rule, 15 U.S.C. § 78u-4(a)(3)(B)(vi), looks at the number of cases in which the plaintiff seeking lead plaintiff status has served as lead plaintiff in <u>any</u> three year period, whether that case is currently active or not. Thus, there is a distinction, and the Court will include *Safenet* in its consideration of the five-in-three rule. *Cunha*, 2009 WL 2029797 at *4 (explaining that the five-in-three rule is not confined to the number of presently active cases a party is serving as a lead plaintiff in, but applies to "all cases (active or otherwise) the party in question has served as a lead plaintiff in the past three years.")

**MEMORANDUM DECISION AND ORDER - 12**

> securities class actions brought as plaintiff class actions pursuant
> to the Federal Rules of Civil Procedure during any 3-year period.

15 U.S.C. § 78u-4(a)(3)(B)(vi) (emphasis added). The legislative history indicates a clear

congressional preference for institutional investors to serve as lead plaintiffs, and expressly

states that such investors may need to exceed the five-in-three restriction. *In re Fannie Mae*

*Securities Litigation*, 344 F.Supp.2d 261, 264 (D.D.C. 2005) (citing H.R. Conf. Rep. No.

104-369, at 34 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730, 733). In this case, the Court is not

persuaded that the bar from serving as lead plaintiff should apply to Plymouth because Miramar

offered no proof of other disqualifying factors beyond its speculation based upon the number of

other cases in which Plymouth is lead plaintiff.

      First, Plymouth is not the sort of "professional plaintiff" that the five-in-three rule was

intended to restrict.  In *Cunha*, the court explained that the term "professional plaintiff" was

meant to restrict the use of plaintiffs who "have only a nominal interest in the litigation and who

act as lead plaintiff primarily to accommodate counsel."  *Cunha*, 2009 WL 2029797 at *4 (citing

5 MOORE'S FEDERAL PRACTICE § 23.191[4] at 23-625).  The five-in-three rule therefore allows

the court to exercise discretion and except from the rule large institutional investors "who have a

real interest in controlling the litigation."  *Id.*  Professional plaintiffs also tend to share an

important characteristic in common, which is that "they have relatively small amounts of money

invested in any one security and typically suffer relatively small financial losses."  *In re Telxon*

*Corp. Securities Litigation*, 67 F.Supp.2d 803, 813 (N.D. Ohio 1999).  There is no evidence

before the Court that Plymouth is involved in this litigation or is seeking lead plaintiff status as

an "accommodation to counsel."  Plymouth also suffered a substantial loss, almost four times the

**MEMORANDUM DECISION AND ORDER - 13**

loss suffered by Miramar. Therefore, the Court does not consider Plymouth to be a professional plaintiff akin to those that the five-in-three rule seeks to bar.

As for the argument that Plymouth is overextended because of its involvement in other cases as lead plaintiff, beyond the number of cases there are no additional disqualifying factors present.  For example, in *Cunha*, the court exercised its discretion and did not appoint the presumptive lead plaintiff because: 1) there was an adequate alternative institutional investor; and 2) the presumptive lead plaintiff and its subsidiaries essentially functioned as one unit, shared the same board of trustees, had the same website and administrative manager, and had collectively been involved in over twenty-one cases within the last three years, indicating a litigious history. Similarly, in *In re Enron Corp. Securities Litigation*, 206 F.R.D. 427, 457 (S.D. Tex. 2002), the court considered the presumptive lead plaintiff disqualified because the *Enron* case was "probably the largest and most complex of its kind in the history of this country" and would demand the full focus of lead plaintiff and lead counsel, yet the presumptive lead plaintiff in the *Enron* case was serving in an exceedingly high number of class actions at the time it requested appointment in *Enron*. 206 F.R.D. at 457.

Miramar has cited five cases in which Plymouth currently is serving as lead plaintiff, and the inclusion of *Safenet*, which has not yet concluded, brings the current total to six.[6]  If

---

[6] From the briefs and the certification, it appears that Plymouth currently is participating as lead plaintiff in *Bristol*, *Sonic*, *Carter's*, *CVS Caremark*, and *Oshkosh* during the three year statutory period for professional plaintiffs prescribed by 15 U.S.C. § 78u-4(a)(3)(B)(vi). (Response Brief at 7–9, Docket No. 33.) Plymouth's appointment in *Coventry* is pending, and while *Coventry* must be disclosed in Plymouth's certification, its status as a pending appointment does not fall within the prohibition of the five-in-three rule. *Cunha*, 2009 WL 2029797 at *3 ("This so-called 5-in-3 rule applies only where the purported lead plaintiff is or has served as lead plaintiff in other cases during the relevant time frame, it does not apply . . . to the number of cases the purported lead plaintiff has filed a securities class action complaint or to cases where it has moved to be designated. . . .") As explained above, the Court considers *Safenet* to be relevant for application of the five-in-three rule.  Even without *Safenet*, however, the five-

**MEMORANDUM DECISION AND ORDER - 14**

Plymouth is appointed lead plaintiff in this case, Plymouth would be lead plaintiff in seven

cases. Although Miramar noted that Mr. Farmer serves as chairman of the board of Brockton,

there is no evidence as in *Cunha* that Brockton is a subsidiary of Plymouth or shares the same

board of trustees.  At the hearing, counsel for Plymouth represented that the Brockton and

Plymouth funds do not overlap, and that while Mr. Farmer is on the board of directors for both

funds, the funds have separate boards.  Consequently, the facts in this case are distinguishable

from *Cunha*, and it would not be appropriate to consider the cases in which Brockton is

participating as lead plaintiff when applying the five-in-three rule.

Nevertheless, even considering Brockton's four lead plaintiff appointments, eleven cases

does not approach the "over twenty-one" cases considered by the court in *Cunha* or the

exceedingly high number of cases coupled with the complexity of the *Enron* case.  Miramar has

not offered sufficient proof beyond mere speculation that Plymouth, despite its involvement in

several other securities class action lawsuits as lead plaintiff and its small number of staff, cannot

"fairly and adequately protect the interests of the class." *See* 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II)(aa).  *See also In re Cree, Inc. Securities Litigation*, 219 F.R.D. 369 (M.D.N.C.

Dec. 17, 2003) (appointing lead plaintiff despite its involvement as lead plaintiff in eight active

actions and six derivative actions absent proof that presumptive lead plaintiff could not devote

adequate time and resources and noting it had twice the financial interest as the next largest

investor).

Miramar's argument that Mr. Farmer's "dishonesty" on the certification constitutes a

factor that should sway the Court to apply the five-in-three bar also falls flat.  It is true that the

---

in-three bar would be triggered.

**MEMORANDUM DECISION AND ORDER - 15**

plaintiff's "honesty, conscientiousness, and other affirmative personal qualities" are important, as is the veracity of a sworn certification. *Shiring v. Tier Technologies, Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007).  But the inadvertent failure to include other cases in which Plymouth is serving as lead plaintiff does not rise to a level of dishonesty that persuades the Court to exercise its discretion and apply the bar. The examples Miramar cited to support its argument that a proposed class representative's untrustworthiness rendered the proposed lead plaintiff atypical are on another level entirely, and do not equate with the inadvertent failure to disclose in this case.

For example, in *Karnuth v. Rodale, Inc.*, 2005 WL 747251 (E.D. Pa. Mar. 30, 2005), the class representative filed a false complaint, and possibly lied about the allegations made therein. Thus, the factual allegations made in the complaint were suspect, rendering the proposed lead plaintiff "atypical" because the claims made in the complaint were not typical of other class members' claims. Similarly, the prospective lead plaintiff in *Zemel Family Trust v. Philips Intern. Realty Corp.*, 205 F.R.D. 434 (S.D.N.Y. 2002) was disqualified because the factual nature of the proposed lead plaintiff's claims made him susceptible to "unique defenses" to the claims made in the complaint that were not applicable to the other class members. In addition, the *Zemel* plaintiff may have had shady dealings involving market trades that were the subject of SEC investigations, which the plaintiff lied about. And in *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990), facts came to light that the proposed lead plaintiff had dealings with other parties to the action, and possibly played favorites by only suing directors he did not personally like. Finally, in *Shiring*, the court found that the proposed lead plaintiff lied twice on the certification concerning the purchase price of the stock at issue.  *Shiring*, 244 F.R.D. at 317.

**MEMORANDUM DECISION AND ORDER - 16**

Coupled with the outright lies on the *Shiring* certification were other factors, such as the plaintiff's utter lack of knowledge about the litigation and personal relationship with an officer of the defendant. In all of the cases Miramar cited, the facts and dishonesty detracted from the claims made in the complaint.

Plymouth's failure to disclose two other lawsuits in which Plymouth is serving as lead plaintiff does not have the same impact as the cases cited above. The claim of dishonesty does not relate to the claims asserted in the complaint, the mistake was corrected promptly, and no disqualifying factors are present other than the mere fact Plymouth is serving as lead plaintiff in more than five cases. The case law cited is therefore distinguishable, and in the exercise of the Court's discretion, it declines to apply the five-in-three bar.

**E. Selection of Counsel**

The PSLRA provides that the most adequate plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Plymouth has requested that the Court approve its selection of Scott + Scott as lead counsel and Holland & Hart as liaison counsel.

Plymouth submits that Scott + Scott and Holland & Hart are highly qualified litigators with extensive experience in prosecuting complex securities actions. (*See* Murdock Decl., Exs. D, E, Docket Nos. 22-4 and 22-5.) Having reviewed both firm's resumes, the Court finds that Scott + Scott and Holland & Hart are both sufficiently qualified and experienced to

serve, respectively, as lead and liaison counsel.[7] The Court will approve the lead plaintiff's

selection of counsel, Scott + Scott and Holland & Hart.

---

[7] Miramar noted that The Briscoe Law Firm PLLC appears on Plymouth's pleadings as "Lead Counsel" in conjunction with Scott + Scott LLP. At the hearing, Plymouth explained that, while the Briscoe Firm represents Plymouth in other matters, the Briscoe Firm is not proffered as lead counsel or co-lead counsel. The Briscoe Law Firm therefore is not approved as lead counsel in this action.

**MEMORANDUM DECISION AND ORDER - 18**

## **ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS**

**HEREBY ORDERED that**:

1)      Motion of Garden City Employees' Retirement System to be Appointed Lead Plaintiff,

        and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel

        (Docket No. 17), is **DENIED**;

2)      Motion of Plymouth County Contributory Retirement System to be Appointed Lead

        Plaintiff, and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison

        Counsel (Docket No. 20), is **GRANTED**;

3)      Motion of Miramar Firefighters' Pension Fund to be Appointed Lead Plaintiff, and for

        Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel (Docket No.

        24), is **DENIED**.

4)      The Court hereby orders the parties to submit a jointly proposed scheduling order on or

        before May 14, 2010.



DATED: May 19, 2010

_____

Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**